UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   v.<br><br>KEVIN LOUIS GALETTO,<br><br>   Defendant. | Criminal Action No. 21-517 (CKK) |

**MEMORANDUM OPINION AND ORDER**
(September 23, 2024)

Pending before this Court is Defendant Kevin Louis Galetto's [71] *Pro Se* Motion for Reduction of Sentence Pursuant to Amendment 2 Reduction [for] Zero Criminal History Points ("Def.'s Mot."); the Government's [73] Response to Defendant's Motion ("Govt. Opp'n"); and Defendant's [82] Reply to the Government's Opposition ("Def.'s Reply") (which was filed by counsel); and Defendant's [83] Notice of Supplemental Authority ("Def.'s Supp."). Upon review of the pleadings, the relevant legal authorities, and the entire record, and for the reasons set forth herein, this Court DENIES Defendant Kevin Galetto's Motion for Reduction of Sentence.

**I. BACKGROUND**

On March 20, 2023, pursuant to a plea agreement, Defendant Kevin Galetto (hereinafter "Defendant" or "Mr. Galetto") entered a plea of guilty to Count One, Civil Disorder, in violation of 18 U.S.C. § 231(a)(3), and Count Three, Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1), in his Second Superseding Indictment. *See* Plea Agreement, ECF No. 57. Mr. Galetto's offense level of 17, Criminal History I, resulted in a calculated sentencing guidelines range of 24 to 30 months imprisonment and a fine of $10,000.00 to $95,000.00. *See* Final Revised Presentence Report ("PSR"), ECF No. 68 ¶¶ 88, 91. On September

1

5, 2023, this Court sentenced Mr. Galetto to a term of 27 months incarceration, followed by 24 months of supervised release and ordered him to pay restitution in the amount of $2,000.00 and a special assessment of $100.00. *See* Judgment, ECF No. 69. At sentencing, the Court declined to rule on the applicability of the zero-point offender reduction as Amendment 821 had not yet gone into effect. *See* 9/5/2023 Sent'g Tr., ECF No. 79, at 19:3-20:1.

Mr. Galetto is currently incarcerated with a projected release date of August 8, 2025. Def.'s Reply, ECF No. 82, at 2 (citing Bureau of Prison's inmate locator). After Defendant's sentencing, the Sentencing Commission retroactively amended the Sentencing Guidelines to reduce the total offense level by two points for defendants without any criminal history points, if they meet certain criteria:

> 1. the defendant did not receive any criminal history points from Chapter 4, Part A;
> 2. the defendant did not receive an adjustment under §3A1.4 (Terrorism);
> 3. the defendant did not use violence or credible threats of violence in connection with the offense;
> 4. the offense did not result in death or serious bodily injury;
> 5. the instant offense of conviction is not a sex offense;
> 6. the defendant did not personally cause substantial financial hardship;
> 7. the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
> 8. the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);
> 9. the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and
> 10. the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaging in a continuing criminal enterprise, as defined in 21 U.S.C. §848.

U.S.S.G. §4C1.1(a) (Adjustment). This Amendment is commonly referred to as Amendment 821, part B, and its retroactive application took effect on February 1, 2024.

Defendant requests a reduction of his sentence from 27 months to 21 months based on his asserted qualification for application of U.S.S.G. §4C1.1(a), his rehabilitation, and his proposed release plan. Def.'s Mot., ECF No. 71, at 4, 6, 7-15. The Government opposes Defendant's motion

2

on two grounds: (1) that Mr. Galetto is ineligible for application of U.S.S.G. §4C1.1(a) because "his offense involved his personal use of violence or credible threats of violence against law enforcement officers and agents;" and (2) even if eligible, the Court should exercise its "substantial discretion" to deny the motion because "the Section 3553(a) factors counsel against granting" such reduction. Govt. Opp'n, ECF No. 73, at 6-10. Defendant's Motion has been fully briefed and is ripe for resolution by this Court.[1]

## II. LEGAL STANDARD

Pursuant to 18 U.S.C. § 3582(c)(2), a defendant may move for a reduction in his term of imprisonment if he was sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." A defendant's motion for reduction is evaluated in two steps. *United States v. Wyche*, 741 F.3d 1284, 1292 (D.D.C. Cir. 2014). Step one involves determining whether the defendant is eligible for a reduced sentence and, if so, calculating the amended Guidelines range. *Dillon v. United States*, 560 U.S. 817, 826-827 (2010). A defendant is only eligible for a §4C1.1 reduction if: (1) the defendant has no criminal history points; (2) the defendant is not subject to any of the exclusionary criteria; (3) the amended guidelines range is lower than the range applied at the original sentencing hearing; and (4) the defendant did not previously receive a sentence at or below the bottom of the now-amended range other than for providing substantial assistance. *See* U.S.S.G. §§ 1B1.10, 4C1.1; *Dillon*, 560 U.S. at 827.

If a defendant is deemed eligible, step two requires that a court "consider any applicable §3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances

---

[1] In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCrR 47(f).

of the case." *Id.* at 827.  In so doing, a court must consider public safety considerations, and may consider information regarding the post-sentencing conduct or situation of the defendant, whether positive or negative.  *See, e.g., United States v. Darden*, 910 F.3d 1064, 1068 (8th Cir. 2018).

If a court decides in its discretion to grant a sentence reduction, it generally may not reduce the term of imprisonment to a term that is less than the minimum of the new guideline range, U.S.S.G. §1B1.10(b)(2)(A), and "in no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served."  U.S.S.G. §1B1.10(b)(2)(C).

### III. ANALYSIS

The Court begins its analysis by first considering whether Mr. Galetto is eligible for a reduced sentence under §4C1.1(a).  The Court notes that Defendant bears the burden in seeking such sentencing reduction.  *See United States v. Keleta*, 552 F.3d 861, 866 (D.C. Cir. 2009).  In this case, there is no dispute that Mr. Galetto did not receive any criminal history points and he meets most of the criteria of Section 4C1.1(a), but the Government contends that Defendant fails to satisfy the criterion that he "did not use violence or credible threats of violence in connection with the offense." §4C1.1(a)(3).

**A. Step One**

"In interpreting [the terms used in] the Sentencing Guidelines, the Court applies the ordinary tools of statutory interpretation and looks to the plain meaning of its terms." *United States v. Seefried*, 639 F. Supp. 3d 8, 10 (D.D.C. 2022) (string cite omitted). Plain meaning may be discerned by looking at the Guidelines' own definitions, if applicable.  The Court notes that the term "use violence" is undefined by the Sentencing Guidelines.  When no definitions are provided, the court may rely on dictionary definitions to determine meaning.  *Kaufman v. Nielsen*, 896 F.3d 475, 485-87 (D.C. Cir. 2018).  Finally, courts may look also to precedent to see how other courts

have interpreted similar words and phrases. *Seefried*, 639 F. Supp. 3d at 10. A recent opinion from this district discusses dictionary definitions of violence in the context of application of Section 4C1.1, namely that violence is: "'[t]he use of physical force, typically 'accompanied by fury, vehemence, or outrage,' and 'unlawfully exercised with the intent to harm'" or the "exertion of any physical force so as to injure or abuse." *United States v. Pauline Bauer*, Criminal Case No. 21-386-2 (TNM), 1/29/2024 Mem. Op., ECF No. 195, at 4-5 (internal citations omitted).[2]

The parties and the Court agree that the appropriate inquiry regarding "use of violence or credible threats" involves looking at Mr. Galetto's conduct on January 6, 2021. Govt. Opp'n, ECF No. 73, at 6-7; Def.'s Reply, ECF No 82, at 13-14 (asserting that mere presence on January 6, as one of the rioters, is not enough). It is not the violence of others or general crowd violence that is the focus of this Court's inquiry. The Court must "evaluate a defendant's conduct in determining eligibility for a §4C1.1 adjustment" as opposed to "simply imput[ing] the "use of violence" to a defendant based on the action of others." *United States v. Bauer*, Criminal Case No. 21-386-2, ECF No. 195, at 8; *see also United States v. Stewart Parks*, Criminal Case No. 21-411-1 (APM), Nov. 15, 2023 Sent'g Tr., ECF No. 125 at 38:13-25, 39:1-4 (applying Section 4C1.1 to a defendant who was not charged or convicted of anything that involved physical harm but where the Government alleged the defendant was close to rioters who overran a group of officers, "notwithstanding [that defendant's] conduct [ ] clearly contributed to the chaos and the mayhem of the day and did so in a significant way").

Prior to proffering its summary of Mr. Galetto's behavior on January 6, 2021, the

---

[2] In *Bauer*, the Honorable Trevor McFadden found that the defendant "both used violence and made credible threats of violence in connection with the offense," and was therefore ineligible for a two-point reduction under U.S.S.G. § 4C1.1 (a). Criminal Case No. 21-386-2, Mem. Order, ECF No. 195, at 9.

5

Government notes that Mr. Galetto was "convicted of a violation of 18 U.S.C. §111(a), a statute designed to protect against a wide array of violence perpetrated against law enforcement officers and agents." Govt. Opp'n, ECF No. 73, at 6, 8 (noting that "multiple judges in this district have rejected applying 4C1.1 to defendants convicted of violating 18 U.S.C. §§111(a)(1) and/or 231") & n.2 (string citing cases).[3] In response thereto, Defendant argues that "Mr. Galetto's decision to plead guilty to 18 U.S.C. §§111(a) and 231(a)(3) does not answer the question whether he 'used violence,'" as "the elements for each offense are listed in the plea agreement," and "[n]either requires the use of violence or an intention to cause harm." Def.'s Reply, ECF No. 82, at 14 (internal citations omitted). Accordingly, Defendant asks this Court to "look at Mr. Galetto's individual actions and intentions" as opposed to his statutes of conviction.

According to the Government, "Galetto was the fifth rioter to enter the [Lower West Terrace] [T]unnel and did so knowing that officers had retreated into the tunnel moments before" and he raised his hand and yelled, signaling for the crowd to advance. Govt. Opp'n, ECF No. 73, at 2. The Government proffers that "Galetto first made indirect contact with an officer by pushing against the rioters ahead of him who were themselves pushing on the police officers in the tunnel, including Officer B.S. at the front of the line." *Id.* at 7. The Government concludes that Mr. Galetto used violence, or at least the threat of violence "because he was a part of the crowd that was now using its cumulative weight and force to its supreme advantage over the significantly

---

[3] Defendant distinguishes the other cases cited by the Government as follows. In *United States v. Hernandez*, No. 22-cr-42 (CRC), the court denied application of USSG §4C1.1, because defendant admitted that he "joined in a group push against the officers" and that he "hit officer B.A. on his riot helmet with the flagpole." In *United States v. Pavlik*, No. 23-cr-45 (TNM), the Government's sentencing memorandum indicated that defendant used violence [pushed against officers] and possessed a dangerous weapon [can of chemical spray], and in *United States v. Herrington*, 23cr199 (BAH), the Government's sentencing memorandum indicated that the defendant "threw smaller objects" at the officers and came to the Capitol with a "large military-style knife and a small stun gun on his person." Def.'s Reply, ECF No. 82, at 16-17.

outnumbered officers in the confined space of the tunnel." *Id.* Moreover, after leaving the tunnel the first time, Mr. Galetto "went back into the tunnel and joined one of the rioters' final pushes against police officers, once again directly engaging in violence against the officers." *Id.* at 7-8. The Government argues that Defendant "directly used violence against Officer B.S. when he pushed against his shield inside [a] confined space . . . for more than two minutes, . . ., and [e]ven when an opportunity to break contact with Officer B.S. presented itself, Galetto did not avail himself of it and instead continued to push against the officer's shield." Govt. Opp'n, ECF No. 73, at 6. As a result of efforts by Defendant and the crowd, Officer B.S. fell to the ground where he faced the danger of being trampled. *Id.* at 7.

The Government relies in part on a factually similar case, *United States v. Giberson*, No. 23-cr-115, where the defendant entered a guilty plea to a Section 231(a)(3) Civil Disorder charge, stemming in part from his action in the [Lower West Terrace] Tunnel. Plea Agrmt, ECF No. 20. In his Statement of Offense, Mr. Giberson agreed that "he participated in a coordinated pushing against the police," and the Government indicated that the video evidence showed that, before this, Mr. Giberson was "on the front lines of the police facing off against them." Nov. 1, 2023 Sent'g Tr., ECF No. 33, at 6:6-17. During the sentencing, the Honorable Carl Nichols explained that it was "a very close question," but he determined that the Government had established by a preponderance of the evidence that "while engaging in the collective pushing against the officers, Mr. Giberson used physical force against the officers that was capable of causing them physical pain or injury and that, through those pushing, . . ., he intended that the force would . . . harm or at least seriously impact the officers. *Id.* at 21:23-25, 22:1-17. Judge Nichols noted that "the Heave-Ho in the Tunnel . . . was possible because of the number of people who were engaged in the Heave-Ho" and further, that Mr. Giberson "stayed on the grounds for an extended period of time"

7

and "put himself in the front line of rioters confronting the police [,] [a]nd he, together with other members of the crowd, pushed against the police line." *Id.* at 59:1-14.  "Law enforcement could not hold their ground and then push the rioters back in part because of how many there were." *Id.* at 59: 5-7.   Judge Nichols distinguished between Mr. Giberson and other January 6 defendants insofar as those other defendants who "made it into the Capitol" or "said bad things" did not "engage with police at the level of seriousness that Mr. Giberson did." *Id.* at 62:12-20.   Even in recognizing that Mr. Giberson did not assault a law enforcement officer like some other January 6 defendants, the court rejected the application of Section 4C1.1, after noting that "Mr. Giberson's conduct appears to be on the low end of those who had some physical contact around the Tunnel or perhaps with law enforcement but much more serious than those who did not." *Id.* at 65:20-25.

Defendant, in his Reply, ECF No. 82, at 16, attempts to distinguish *Giberson* on grounds that the court there found that Mr. Giberson "intended his heave-ho efforts to harm or 'seriously impact' the officers," where Defendant proffers that there is no similar intent here. *Id.*  In *Giberson*, the defendant chanted "drag them out" which was interpreted as meaning the rioters should drag the police out of the tunnel by force. *Id.* (internal citations omitted).  Furthermore, Defendant notes that Judge Nichols did not have the benefit of extensive briefing on this issue. *Id.* And finally, Defendant notes that "Judge Nichols [said he] was going to impose the same below-Guidelines sentence regardless," whereas, here, Mr. Galetto's sentence could be affected by months. *Id.*  Moreover, Defendant recently filed a Notice of Supplemental Authority attaching and discussing another case decided by Judge Nichols, *United States v. Doolin*, No. 21-cr-447-03 (CJN), in which the Government argued that Mr. Doolin's participation in the "heave-ho" in the Tunnel was disqualifying.  In that case, the defendant used a "riot shield to forcefully push into the Tunnel and, along with the mob that had gathered there, attempted to overtake the rows of

8

police protecting this entrance to the Capitol with the crowd around him." Def.'s Supp., ECF No 83, at 2 (internal citation omitted). Mr. Doolin's motion for an indicative ruling (sought by defendant during his appeal to the D.C. Circuit) was granted by the court, which found him eligible for a reduction because he "did not engage in violence in the ordinary meaning of the term" despite stealing a police riot shield that was passed to other rioters and participating in a heave-ho. June 18, 2024 Order, ECF No. 83-1, at 1-2.

In the instant case, Mr. Galetto argues that his conduct "did not involve "violence" under §4C1.1 because he lacked the intent to injure or harm another." Def.'s Reply, ECF No. 82, at 6; *see United States v. Yang*, No. 23-cr-100 (JDB), 2024 WL 519962, at *4 (D.D.C. Feb. 9, 2024) (finding that defendant's January 6 physical contact with officers did not disqualify him from receiving the zero-point offender reduction in part because "this contact was not made with an intent to harm"). In *Yang*, the defendant "stood near the front of the crowd close to the police line" in the Rotunda. *Id.* at *1. He did "make physical contact with the officers twice;" the first time was "[w]hen a scuffle broke out nearby, officers surged forward, and Yang briefly grabbed an officer's wrist." *Id.* The second time was when "an officer approached from the side and pushed [another member of the crowd] firmly with a baton," and Yang, who was holding Miller, "briefly grabbed the baton as Miller fell backward." *Id.* The court found that Mr. Yang's actions did not constitute "violence" because there they were "not made with the intent to harm," nor was the contact "accompanied by fury, vehemence, or outrage, or the like." *Id.* at *4. The court concluded that "Yang did not act with the degree of aggression necessary to fairly characterize his actions as 'violence.'" *Id.*

Defendant argues that, like Mr. Yang, Mr. Galetto did not have the requisite intent to physically injure another person on January 6, 2021, and Defendant asserts that a review of the

9

video [Ex. 3.2] supports that statement. Defendant proffers that Mr. Galetto was "pressed up against Officer B.S.'s shield" and while he admittedly had his "hands on the shield, he indicates it was "at first to push and then to balance [himself] to keep from falling" and "from being pressed directly into the shield by the surging mob." Aug. 8, 2023 Sent'g Tr., ECF No. 80, at 33:21-25.[4] Mr. Galetto allegedly attempted to step away, but he was pushed by the crowd back up against Officer B.S's shield. Defendant indicates that "[t]he video does not fully capture what happens next," but during sentencing, the Court noted that Officer B.S. did end up on the ground as did Mr. Galetto. Sept. Sent'g Tr.. ECF No. 79, at 4:11-13. Mr. Galetto stated that "[j]ust prior to Officer B.S. being knocked down. . . there was a moment where I was able to turn my body in an attempt to exit the tunnel." Aug. Sent'g Tr., ECF No. 80, at 33:2-5. The Court viewed this issue in equipoise as to whether Defendant turned around to leave or so that he could push against the officers with his back. Sept. Sent'g Tr., ECF No. 79, at 15:22-25; 16:1-8. Mr. Galetto stated that as he moved from the front, he "was quickly turned around by a surging crowd and trapped with [his] back against the officers," and then someone else caused Officer B.S. to fall, and Defendant was also "knocked to the ground in a wave." Aug. Sent'g Tr., ECF No. 80, at 33:5-9. The Court concluded that "[t]here's nothing that I've indicated nor has the government suggested that anything other than the pushing and pulling in terms of Mr. Galetto's role in why [Officer B.S.] fell to the ground." Sept. Sent'g Tr., ECF No. 79, at 15:6-9. Defendant argues that when he and Officer B.S. fell, Defendant was in a physical position where he could have, but did not, hurt Officer B.S. Def.'s Reply, ECF No. 82, at 11. The Court notes that what Defendant did not do is not as important as what he did do.

---

[4] This Court started the sentencing on August 8, 2024, but continued the sentencing to September 5, 2023, to review additional materials discussed and presented by counsel at the sentencing.

Furthermore, while Defendant has reasserted arguments made at sentencing and quoted portions of the sentencing transcript that favor his argument, the Court notes that, at sentencing, it made clear that:

> I've watched the video on numerous occasions. . . Obviously, others acted violently, not indicating you were the only one, obviously. But the tunnel is a narrow space. The insurrectionists had followed the police as they retreated to hold the tunnel. Mr. Galetto, you were in front of the group of insurrectionists confronting them. Windows were broken as the insurrectionists rushed forward towards the police. You can hear Commander Ramy call other police officers saying, quote, hold the line. Quote, we are not losing the Capitol today. A line of officers, including Officer B.S., in riot gear with police shields moved to confront the rioters. They were the last line of defense in the tunnel.
>
> Although Mr. Galetto had no weapon in his hands and he pushed. . there were others who pushed and grabbed at the officer, you know, particularly to disarm and disable them by taking their police shields which protected them from injury and acted as a barrier against those who were the insurrectionists, Mr. Galetto and others were pushing against the police line in which Officer B.S. stood. You can see the video, he grabbed at the shield, pushed against the shield and the officer. Officer B.S. was holding back the defendant and other rioters who were using this force to get the shield and to break the police line. You were all in one compact area. But Mr. Galetto is in front, so he's certainly participating in the push pull.

Sept. Sent'g Tr., ECF No. 79, at 15-16.

> The Court went on to note that after Mr. Galetto moved back to the tunnel entrance:
>
> He's at the entrance, talks to the rioters that are there, telling them we need more people, exhorting them to come in, that more rioters were needed to overwhelm the police line. And he's at the entrance for another hour and a half, which is quite a long period of time. Then at 4:15 he joins the rioters again, making the last - - what I view is the last pushes against the police line. And this is a deliberate decision on his part, action. He's had an hour and a half to think about what he should do, should he leave, whatever, and he doesn't, to once again by force try and break the police line. And again, Mr. Galetto was at the front.

Sept. Sent'g Tr., ECF No. 79, at 16. While the Court declined to make any ruling on the zero [criminal history points] amendment [prior to the amendment becoming effective], the Court did opine that "I don't think it would apply to you," because '[y]our actions on January 6th, I can't say they were nonviolent[;] I think they were." *Id.* at 19: 4-9.

11

The Court finds that Defendant's reliance on *Yang* – where the defendant was in the Rotunda and on the front lines, but the actions he took were defensive in nature – and on *Doolin* – where the defendant was one member of the mob trying to push through the Tunnel, but was not on the front lines – differ from the circumstances of this case. Here, Mr. Galetto was on the front lines, encouraging the other rioters, and actively pushing on Officer B.S.'s shield as the mob around him tried to push through the Tunnel. Mr. Galetto observed that the police officers were outnumbered, and he personally observed Officer B.S. fall to the ground, where he remained at risk until another officer helped him. Yet, instead of walking away after that, Mr. Galetto waited around for a rather lengthy period – during which he talked to and exhorted other rioters – before he again joined the rioters in yet another attempt to push through police lines. As the Court noted at sentencing: "I would point out that [Defendant] did physically attack law enforcement and encouraged others to physically challenge the police lines [and his] very presence, in terms of [his] actions in the mob, helped create a momentum of violence." Sept. Sent'g Tr., ECF No. 79, at 18:9-12. Accordingly, this Court finds that Mr. Galetto is not eligible for a Section 4C1.1 reduction because he used "violence or credible threats of violence" in connection with the offense for which he was charged. Accordingly, it is this 23rd day of September 2024,

ORDERED that Defendant's [71] Motion for Reduction of Sentence Pursuant to Amendment 2 Reduction [for] Zero Criminal History Points is DENIED.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE